**UNITED STATES of America, Appellee,**

v.

**Earl L. KING, Jr., Appellant.**

**No. 85–1769.**

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 10, 1986.

Decided Oct. 10, 1986.

Rehearing Denied Nov. 4, 1986.

---

* The Honorable Richard H. Battey, United States District Judge for the District of South Dakota, sitting by designation.

Holly McCoy Zimmerman, Kansas City, Mo., for appellant.

Robert E. Larsen, Asst. U.S. Atty., Kansas City, Mo., for appellee.

Before LAY, Chief Judge, HEANEY, Circuit Judge, and HENLEY, Senior Circuit Judge.

PER CURIAM.

Earl L. King was convicted by a Kansas City jury of one count of conspiracy to distribute cocaine in violation of 21 U.S.C. § 846 (1982) and five counts of knowing and intentional distribution of cocaine un-

der 21 U.S.C. § 841(a)(1) (1982). The trial court[1] sentenced King to two concurrent twelve-year prison terms, five years probation, a $10,000 fine and a $250 assessment. King appeals from the judgment of conviction alleging that the trial court erred in failing to find entrapment as a matter of law, in refusing to suppress the testimony of a paid governmental informant, in failing to sever his trial from that of his codefendants, and by refusing to hold that a cumulation of errors denied him of a fair trial.[2] We affirm.

In 1983, King met Matt Bower at the Chouteau Inn, a bar in Kansas City. King was working there part time as a bouncer and Bower, the younger brother of King's good friend, had just begun working there. Over the next several months, Bower observed King engage in a number of drug deals. Bower reported this to a local police officer who referred Bower to Special Agent David C. Cigich of the Drug Enforcement Agency (DEA). Bower informed Cigich that he believed he could purchase drugs from King.

On September 20, 1984, Bower arranged to buy one ounce of cocaine from King on the following day for $2,000. Bower informed Cigich of the transaction and Cigich supplied Bower with a concealed recorder and $2,000 in government funds. Cigich also arranged for police surveillance of the Chouteau Inn, where the deal was to occur. Bower then purchased 16.38 grams of cocaine from King for $2,000 and the two then talked about future drug deals.

On October 18, 1984, Bower made similar arrangements with Cigich and purchased 18.59 grams of cocaine from King for $2,100. On November 1, Bower purchased 74.99 grams of cocaine from King for $7,700. Accompanying King during the transaction was one of King's codefendants, Kenneth Matlock. The entire transaction was observed by the DEA and was taped with a recorder hidden on Bower. On November 6, Bower delivered an ounce of cocaine to a buyer at the Chouteau on behalf of King and returned the buyer's partial payment of $800 to King. King was again accompanied by Matlock. Bower informed Cigich of this transaction on the following day.

On November 8, Bower ran a similar errand for King, this time delivering two ounces of cocaine to a buyer for $3,800. Bower informed Cigich of this early the next morning at which time Cigich obtained a search warrant of the hotel room where Bower had met King. Cigich and other DEA agents arrived at the hotel room just as King and his brother, Jimmy King, were leaving. The officers examined packages in Earl King's possession and found 15.42 grams of cocaine, a sifter, scales, and a semiautomatic weapon, and $2,063 in cash, $400 of which was marked as money supplied by Cigich to Bower for a previous deal. The Kings and Matlock were later arrested and indicted on several drug charges. All three defendants were tried together.

**Entrapment**

King's first contention is that the trial court erred in denying his motion for judgment of acquittal because the evidence proved entrapment as a matter of law. For King to prevail in his contention that the trial court should have granted his motion, he must show entrapment as a matter of law. *United States v. Resnick*, 745 F.2d 1179, 1186 (8th Cir.1984). The record, therefore, must clearly indicate that a government agent originated the criminal design, that the agent implanted that criminal design in the mind of an innocent person, and that the innocent person then committed the crime at the government agent's

---

1. The Honorable Scott O. Wright, United States District Court for the Western District of Missouri, presiding.

2. King argues that even if none of the above-cited errors were sufficient to require reversal in and of themselves, the cumulation of those errors cannot be considered harmless. Since we hold that the trial court did not err on any of the issues raised by King, we have no basis on which to find a denial of a fair trial.

urging. *United States v. Randolph,* 738 F.2d 244, 245 (8th Cir.1984) (per curiam).

▮▮▮ The evil with which the defense of entrapment is concerned is "the *manufacturing* of a crime by law enforcement officials and their agents." *Lopez v. United States,* 373 U.S. 427, 434, 83 S.Ct. 1381, 1385, 10 L.Ed.2d 462 (1963) (emphasis in original). This does not mean, however, that government agents are precluded from using deceit, stealth, and strategy in their attempts to apprehend criminals. *Sherman v. United States,* 356 U.S. 369, 372, 78 S.Ct. 819, 820, 2 L.Ed.2d 848 (1958); *United States v. Lard,* 734 F.2d 1290, 1293 (8th Cir.1984). A line must be drawn, however, between the use of that deceit against an unwary criminal and an unwary innocent. *Sherman,* 356 U.S. at 372, 78 S.Ct. at 820. Thus, the principal focus of inquiry is the defendant's predisposition to commit the crime alleged. *Resnick,* 745 F.2d at 1186. Determining predisposition requires an examination of the defendant's personal background, character, and state of mind, as well as the extent to which the government agent instigated or induced the criminal act. *United States v. Dion,* 762 F.2d 674, 686–88 (8th Cir.1985) (citing ten factors utilized by various circuits in determining predisposition), *reversed on other grounds,* —— U.S. ——, 106 S.Ct. 2216, 90 L.Ed.2d 767 (1986); *Lard,* 734 F.2d at 1293.

▮▮▮ King alleges that Bower coerced him into selling the drugs by playing on King's sympathies and King's allegiance to Bower's brother. Bower had been involved in an industrial accident causing serious injury to his foot, and King claimed at trial that Bower begged him for some cocaine to help relieve the pain. King also testified that Bower often mentioned Bower's brother and tried to use that friendship as an inducement for King to sell Bower drugs. It is plain, however, that the jury rejected these claims and relied on the government's evidence that King was actually an experienced and sophisticated drug dealer to whom Bower was just another customer. In reviewing the trial court's ruling on the motion for acquittal, this court must view the evidence in the light most favorable to the government. *Resnick,* 745 F.2d at 1186. So viewing the evidence, we hold that there was sufficient evidence on which the jury could find that no entrapment occurred.

**Informant's Testimony**

King's second allegation is that the trial court erred in failing to suppress Bower's testimony *sua sponte* since the evidence showed that Bower was paid for his work as an informant on a contingent fee basis. The evidence showed that Bower was paid a total of $5,000 for his work on this case, but that $3,000 of that amount was paid only after the defendants were arrested. King alleges that this proves Bower was paid not for the work he did, but for the results obtained in the investigation. Thus, according to King, Bower's testimony should have been suppressed under the authority of *Williamson v. United States,* 311 F.2d 441 (5th Cir.1962). No objection to Bower's testimony was made on this basis at trial.

In *Williamson,* the Fifth Circuit held that a paid informant's testimony was inadmissible when payment was contingent upon whether the informant's efforts produced admissible evidence and when no justification or explanation as to the reason for the arrangement was offered. *Id.* at 444. If, however, the government agents could prove that they had certain knowledge of criminal activity by certain suspects, such a fee arrangement may be proper. *Id.* Another appropriate means would be to carefully instruct the informant on the rules against entrapment to ensure that the informant does not induce the defendant to commit a crime, rather than merely present him with an opportunity to commit the crime. *Id.*

▮▮▮ This court recently held that an arrangement under which a fee was contingent upon a suspect's conviction would not alone require reversal. *United States v. Risken,* 788 F.2d 1361, 1373 (8th Cir.1986). The *Williamson* holding is limited to "cases in which the government directs the informant to implicate government-pretar-

geted specific defendants." *United States v. Yater,* 756 F.2d 1058, 1067 (5th Cir.), *cert. denied,* — U.S. ——, 106 S.Ct. 225, 88 L.Ed.2d 226 (1985). It is not the contingent fee per se which offends due process, it is the government's preselection of targets for implication by an informant. *Risken,* 788 F.2d at 1374.

◼ In this case, King was not pretargeted by the government. Bower approached the law enforcement officials with information that King was selling drugs. In order to convict King, the government needed evidence of an actual sale or sales. Bower offered his services for which the DEA was willing to pay $5,000. The fact that most of this was paid to Bower after the defendants' arrest is evidence of a possible contingent fee arrangement, but it is not conclusive proof. In short, there is insufficient evidence that the fee arrangement between Bower and the DEA risked a violation of King's due process rights and denied him a fair trial.[3] Since King made no objection to Bower's testimony at trial, we can reverse the trial court's decision only if it constituted plain error. Fed.R.Crim.P. 52(b). We hold that no such error occurred.

**Severance**

◼ King also urges that the trial court erred in failing to grant his pretrial motion to sever his trial from that of his codefendants, or in the alternative, to sever the drug related charges from charges that the defendants assaulted Bower with deadly weapons. Rule 14 of the Federal Rules of Criminal Procedure gives the trial court the discretion to sever trials of defendants or of certain counts in an indictment if it appears that a defendant will be prejudiced by the joinder. *See United States v. De-Luna,* 763 F.2d 897, 919 (8th Cir.), *cert. denied,* — U.S. ——, 106 S.Ct. 382, 88 L.Ed.2d 336 (1985). To prevail on appeal on these grounds, a defendant must show clear prejudice as a result of the trial

court's denial of his motion and an abuse of the trial court's discretion. *United States v. Reeves,* 674 F.2d 739, 744 (8th Cir.1982). For example, a severance is required only when the proof is such that a jury could not be expected to compartmentalize the evidence as it relates to separate defendants or to two separate counts. *Id.* at 744–45. A defendant, however, has a "heavy burden" of showing real prejudice, *e.g., DeLuna,* 763 F.2d at 919, and a trial court's ruling will rarely be disturbed on appeal, *United States v. Weir,* 575 F.2d 668, 672 (8th Cir.1978).

◼ The evidence in this case, however, was not complicated or confusing. The government's case was presented to the jury in a systematic, orderly manner and there was little risk of jury confusion as to the defendants or the separate counts of the indictment. We hold that the trial court did not err in denying King's motion to sever.

Accordingly, the judgment of conviction is affirmed.

---

**3.** If the fee to the informant is contingent on his testimony to sustain a conviction, a greater concern arises as to the integrity of the testimony at trial. When the fee is contingent upon information leading to arrest, then the concern focuses on whether the defend-

ant was pretargeted or was entrapped. When, as here, the informant's evidence was witnessed and recorded, less scrutiny is necessary, since the evidence obtained does not rest on the informant's evidence alone.