**UNITED STATES of America, Appellee,**

v.

**Terry A. "Buddy" WOODARD, Appellant.**

**No. 90–1967EA.**

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 28, 1990.

Decided March 8, 1991.

As Amended May 7, 1991.

Val Price, of Jonesboro, Ark., for appellant.

Terry Derden, Asst. U.S. Atty., Little Rock, Ark., for appellee.

Before ARNOLD, Circuit Judge, BRIGHT, Senior Circuit Judge and BEAM, Circuit Judge.

ARNOLD, Circuit Judge.

Terry A. Woodard appeals from the sentence imposed on him by the District Court [1]. Woodard pleaded guilty to two offenses: possessing 441.56 grams of methamphetamine with intent to distribute it, in violation of 21 U.S.C. § 841(b)(1)(C) (1987), and purchasing a .45 caliber pistol at a time when he had been charged with a felony, in violation of 18 U.S.C. § 922(n) (1986). He received a 63–month sentence on the drug charge, and a 60–month concurrent sentence on the firearms charge. He argues that the District Court erred in not giving him a sentence more lenient than that indicated by the Sentencing Guidelines.

## I.

The facts of the crimes to which Woodard has pleaded guilty are undisputed. On November 21, 1987, at the time of his arrest, he was bringing 441.56 grams of methamphetamine from Poplar Bluff, Missouri, to Trumann, Arkansas. He had with him a loaded .44 caliber revolver. On December 10, 1987, he was charged in a state court with possession of a controlled substance with intent to deliver it. Just four days after the charge was filed, on December 14, 1987, Woodard bought a .45 caliber pistol. He was able to buy the gun only by lying: he falsely stated that he had not been charged with a felony at the time.

On January 25, 1988, the defendant pleaded guilty to the drug charge, and the

---

1. The Hon. George Howard, Jr., United States District Judge for the Eastern and Western Districts of Arkansas.

state court gave him a suspended sentence of ten years, with the first two years to be served on supervised probation. The State of Arkansas did not charge him with any firearms offense, either in connection with the .44 caliber weapon that he was evidently using in the drug traffic, or in connection with the .45 caliber weapon that he bought while under a criminal charge.

On October 12, 1989, an Assistant United States Attorney for the Eastern District of Arkansas asked the Assistant Attorney General in charge of the Criminal Division of the Department of Justice for permission to prosecute Woodard in a federal court. Permission was required because of the Department's *"Petite* Policy." This is an internal practice which prevents federal prosecution when a state has prosecuted someone for substantially the same act unless there are compelling reasons, and the Assistant Attorney General gives prior approval. See *Petite v. United States*, 361 U.S. 529, 530–31, 80 S.Ct. 450, 451, 4 L.Ed.2d 490 (1960) (per curiam). The principal reason given for this request was that the state courts had not treated Woodard's drug offense seriously enough. The Assistant Attorney General granted the request, and in due course, on January 16, 1990, Woodard was indicted by a federal grand jury. As previously indicated, he pleaded guilty.

## II.

No question is raised about the proper range of sentence under the Sentencing Guidelines. The indicated range for the drug offense is 63–78 months. As to the firearms charge, the maximum sentence under the statute is 60 months. The District Court sentenced Woodard to serve 63 months, the minimum allowable under the Guidelines. Woodard's argument is that the District Court erred in failing to depart downward. He complains that he has been subjected to a "double jeopardy application of the Guidelines." Brief for Appellant 4. The point is this: the defendant had already been charged, convicted, and sentenced in the state court for the same act, possession of methamphetamine with in-

tent to distribute. The federal court, therefore, should have been more lenient with him.

■ It needs to be kept in mind that there is no double-jeopardy argument here in the traditional sense. For purposes of the Double Jeopardy Clause of the Fifth Amendment, the federal crime of drug possession now being brought against Woodard is a separate offense from the state crime of drug possession. This is true notwithstanding the fact that the two charges are based on the same act. The dual-sovereignty doctrine which underlies this proposition of law is well established in Supreme Court precedent. See, *e.g., Abbate v. United States*, 359 U.S. 187, 79 S.Ct. 666, 3 L.Ed.2d 729 (1959). Secondly, Woodard himself concedes that we have no power to review the decision of the Department of Justice to waive its *Petite* policy. "[B]ecause the *Petite* policy is an internal administrative policy, it is unenforceable against the government." Brief for Appellant 6. For this reason, we forego any extended discussion of part C of the dissenting opinion, which argues that the department's waiver of the *Petite* policy was based upon a mistake of law or was somehow inappropriate for other reasons. We observe, in addition, that appellant himself does not make the argument that the *Petite* waiver was somehow flawed.

■ We also note, for purposes of completeness, that there is some doubt about the reviewability of Woodard's contention. Under 18 U.S.C. § 3742(e), decisions by sentencing courts not to depart from the Guidelines are generally not reviewable. See *United States v. Evidente*, 894 F.2d 1000, 1003–04 (8th Cir.), *cert. denied*, —— U.S. ——, 110 S.Ct. 1956, 109 L.Ed.2d 318 (1990). The argument is made, however, that the District Court acted under a mistake of law—that the Court believed, in accordance with representations made by the government, that it had to sentence defendant to at least 60 months.[2] This contention raises a legal issue that we have power to review. Our review of the transcript leaves us with the strong impres-

sion that the existence *vel non* of a five-year minimum, had, in the end, no substantial influence on the sentence imposed. Rather, the District Court accepted the government's argument that the state court had simply not punished the drug crime enough. If the state court had given the defendant a term of years, and if he had served the term, or at least had begun to serve it, we could understand the argument that the federal sentence should be lessened. This would be a way of giving a defendant credit, so to speak, for time already served with respect to the same act. This sort of consideration might well have appealed to the District Court. Such was not the case here, however. Defendant had served absolutely no time for a serious drug crime. As a matter of federal policy, the Department of Justice thought it appropriate to prosecute, and we can well understand this decision.

The District Court summarized its view of the case as follows:

[T]he Government takes the position that this was more or less a cavalier approach to a rather serious offense, a drug offense that has really shaken this country up in more ways than one.

Our family life that we cherish in this nation, and have since the inception of this country, appears to be shaken to its foundation so to speak as a consequence of this drug problem. It has entered into our elementary schools. A lot of injuries, suffering, families or family members deprived of the necessities of life, deaths in many of our communities. A lot of our senior citizens are threatened, afraid to leave their homes at night. *It's a serious problem, and to look at this serious conduct in such a cavalier attitude was the basis of the federal government in prosecuting these cases to make sure that justice was done. So I don't see any mitigating circumstances here.*

Sent.Tr. 30 (emphasis ours).

**2.** The government did make this representation, and it was in error, but we have no doubt that the error was inadvertent. At the time of the sentencing, the offense did carry a five-year minimum, but this provision was not in effect at the time the crime was committed.

We find no fault with this reasoning. We believe, in addition, that this passage clearly demonstrates that the District Court was of no mind to depart downward, and that the same sentence would have been imposed even if the government had correctly advised the Court that the five-year minimum for the drug crime did not apply.

We find no error of law in the sentence imposed by the District Court, and the judgment is accordingly

Affirmed.

BRIGHT, Senior Circuit Judge, dissenting.

I respectfully dissent. In this case, the Government's hindsight may be 20/20, but its justice is blind.

In November 1987, Terry Woodard, strapped for cash, agreed to act as a drug courier for an individual he met in a bar. Woodard was to receive $500 to transport roughly a pound of what he believed to be marijuana between Arkansas and Missouri. Plea tr. at 14–15; Presentence Report (PSR) ¶ 6. As it turned out, the substance was 57% pure methamphetamine.

The State of Arkansas subsequently prosecuted Woodard for possession with intent to deliver methamphetamine. This charge carried a penalty of five to twenty years imprisonment under Arkansas law. Ark.Code Ann. § 5–64–401(a)(1) (1987) (amended 1989); *see also* Defendant's Exhibit 5. Acting under the authority of Arkansas law, the state judge suspended imposition of Woodard's sentence for ten years.[1]

The suspension required Woodard to report to probation authorities for the first two years of his suspension, maintain steady employment, support his family, avoid drugs and alcohol and obey all laws and ordinances. Additionally, the state court could revoke the suspension for

**1.** In all but the most serious cases, the Arkansas code permits state court judges, after considering certain criteria, to suspend the imposition of sentence for an offender with less than two felony convictions. Ark.Code Ann. §§ 5–4–104(e)(1), –301 (1987). The code defines "suspension" as "a procedure whereby a defendant

cause at any time within the intervening ten years. Ark.Code Ann. § 5–4–309 (1987). In that event, Woodard's statutory minimum sentence would have been five years imprisonment. *See* Ark.Code Ann. § 16–90–107(b)(1) (1987).

The state court's approach, in affording Woodard an opportunity to rehabilitate himself, seems highly appropriate under the circumstances. Woodard was a first-time offender,[2] played a minimal role in the offense and voluntarily pled guilty. He also provided several character references and fully cooperated with law enforcement requests for information.

To date, Woodard has proved himself worthy of the judge's confidence. The Government stipulates that Woodard fully satisfied the terms and conditions of his two-year state probation. In addition, he secured employment, stayed away from drugs and changed his lifestyle. Sent. tr. at 20, 23.

Nevertheless, with eight years still remaining on Woodard's suspended sentence, an Assistant United States Attorney for the Eastern District of Arkansas, seemingly decided that the State, as it worked out, had sentenced Woodard too leniently. The federal prosecutor therefore sought, and obtained, permission to institute a subsequent federal prosecution against Woodard for the 1987 offense.[3] This sort of approach stands the criminal justice system on its head.

In 1959, the Government adopted a general policy against dual state and federal prosecution of the same offense. *See Petite v. United States,* 361 U.S. 529, 530–31, 80 S.Ct. 450, 451, 4 L.Ed.2d 490 (1960) (per curiam). This policy, which became known as the *"Petite* policy," forbids federal prosecution of individuals for allegedly criminal conduct that previously has been the sub-

ject of a state prosecution. *Thompson v. United States,* 444 U.S. 248, 248, 100 S.Ct. 512, 512, 62 L.Ed.2d 457 (1980) (per curiam). The only exception arises when the United States Department of Justice determines that a successive federal prosecution will serve "compelling interests of federal law enforcement policy" and authorizes such action in advance. *Id.* (citation omitted). The purpose behind the *Petite* policy is to avoid the unfairness of subjecting an offender to double punishment for only one crime merely because two sovereigns possess authority to prosecute the case. *Rinaldi v. United States,* 434 U.S. 22, 27, 31, 98 S.Ct. 81, 84, 86, 54 L.Ed.2d 207 (1977) (per curiam).

The Government may well be correct that no constitutional bar exists as to its successive prosecution. *See United States v. Wallace,* 578 F.2d 735, 739 (8th Cir.), *cert. denied,* 439 U.S. 898, 99 S.Ct. 263, 58 L.Ed.2d 246 (1978). I cannot agree, however, that the successive prosecution factor was irrelevant to the sentencing determination. To the contrary, I believe the circumstances of this case present a compelling claim for a downward departure from the range prescribed by the Sentencing Guidelines. I reach this conclusion for several reasons.

**A.  Departure for Successive Prosecution**

The record discloses that the district court misunderstood its authority to depart from the Guidelines based on the Government's successive prosecution. In rejecting Woodard's motion for a downward departure, the court stated: "I don't see any double jeopardy and, therefore, the court has no other alternative other than to re-

---

... is released by the court without pronouncement of sentence and without supervision[.]" Ark.Code Ann. § 5–4–101(1) (1987).

**2.** Woodard's only prior contact with law enforcement consisted of driving while intoxicated in 1982.

**3.** The federal prosecutor also obtained permission to file charges against Woodard for a 1987 firearm offense that the State declined to pursue. As the majority opinion indicates, Wood-

ard received a five-year sentence (the statutory maximum) for this charge. *See* 18 U.S.C. §§ 922(n), 924(a)(1)(D) (Supp. V 1987). However, the prosecutor himself noted that "it would be impossible to file the gun charge without the drug charge." Defendant's Exhibit 2. I therefore limit my discussion to the drug offense, with the expectation that a change in attitude about the drug sentence would produce a corresponding reduction in the firearm sentence.

ject the argument as not being well founded." Sent. tr. at 30. Thus, the court apparently believed that only a de facto double jeopardy claim could constitute grounds for a departure in a dual prosecution case. This is incorrect.

Here, the Government sought to effect not only a successive *prosecution*, but also a successive *punishment*. The Sentencing Guidelines do not address this factor. In *United States v. Collins*, 915 F.2d 618, 621 (11th Cir.1990), the Eleventh Circuit recognized that "the guidelines do not expressly consider an intervening sentence and the possibility that a defendant has demonstrated his determination to avoid future crimes." [4] This observation comports with the language of 18 U.S.C. § 3553(a), which requires courts to impose a sentence "not greater than necessary" to achieve statutory objectives.

The district court's misunderstanding on this point was far from harmless. At sentencing, Woodard argued, in essence, that his successful completion of the state probation term showed that incarceration was unnecessary. The district court, however, conducted no inquiry into Woodard's claim. It made no findings on rehabilitation or the need for federal incarceration.

B. Governmental Misrepresentations

At sentencing, the Government represented that Woodard's offense carried a statutory minimum penalty of five years under federal law. The Government used this asserted federal minimum penalty to argue that the State seriously underrated Woodard's offense. The Government further represented that the district court possessed no authority to depart below the asserted five-year minimum without a Government motion.

These representations were, in fact, inaccurate. In 1987, the federal statutes governing Woodard's offense imposed no mandatory minimum sentence. 21 U.S.C. § 841(b)(1)(C) (Supp. V 1987).[5] Accordingly, no Government motion was required for a downward departure. *See* U.S.S.G. §§ 5G1.1 & comment., 5K2.0, p.s.[6] Moreover, the Arkansas statutes, by their terms, prescribed a potentially more severe penalty (five-year minimum) for Woodard's conduct than the federal law at that time.

The Government's erroneous representations materially prejudiced Woodard's cause. In denying the downward departure, the court stated:

[T]he Government takes the position that this was more or less a cavalier approach to a rather serious offense, a drug offense that has really shaken this country up in more ways than one.

Our family life that we cherish in this nation, and have since the inception of this country, appears to be shaken to its foundation so to speak as a consequence of this drug problem. It has entered into our elementary schools. A lot of injuries, suffering, families or family members deprived of the necessities of life, deaths in many of our communities. A lot of our senior citizens are threatened, afraid to leave their homes at night. *It's a serious problem, and to look at this serious conduct in such a cavalier attitude was the basis of the federal government in prosecuting these cases to make sure that justice was done. So I don't see any mitigating circumstances here.*

4. The court in *Collins* went on to opine that the proper analysis was whether a defendant's criminal history category over-represented the likelihood of future misconduct. 915 F.2d at 621. In my view, the successive sentencing factor may also lend itself to other analyses.

5. In 1988, Congress amended 21 U.S.C. § 841 to impose a mandatory minimum sentence of five years for offenses involving more than 100 grams of a methamphetamine mixture. Pub.L. No. 100–690, § 6470(g), 102 Stats. 4181, 4378 (1988) (codified as amended at 21 U.S.C. § 841(b)(1)(B)(viii) (1988)). However, this amendment took effect more than a year after Woodard committed the instant offense.

6. The presentence report (PSR) did nothing to counter these misrepresentations. *See* PSR ¶¶ 38, 42, 58.

Sent. tr. at 30. From the above quotation, the federal prosecutor apparently obtained considerable mileage by arguing to the district court that the State failed to take Woodard's conduct seriously. As previously noted, however, the 1987 federal drug statutes would have themselves permitted this so-called "cavalier" approach. The district court was entitled to know this in making its departure determination.

Woodard likewise incurred prejudice from the prosecutor's claim that any downward departure required Government consent. In imposing sentence, the district court rebuffed Woodard's rehabilitation claim, stating:

> I don't know all the particulars on it, *but the Government takes the position that they cannot make recommendation for a departure, and for that reason* the court thinks that taking him out of circulation might prove beneficial to him.

Sent. tr. at 31. The above quote suggests that the district court relied on the Government's misrepresentations in avoiding the merits of Woodard's legitimate arguments.

### C. Misstatements in Waiver Application

Finally, the district court misunderstood certain material facts underlying the *Petite* policy waiver obtained by the federal prosecutor. In the waiver application, the federal prosecutor represented to the Department of Justice that Woodard's offense carried a mandatory minimum sentence of *ten* years. The application listed this asserted mandatory minimum as one of three federal interests left unvindicated by the state prosecution. Additionally, the application characterized the state prosecution as "ineffectual," and reported that the case "fell between the cracks." Defendant's Exhibit 2.

Both representations were inaccurate. As mentioned above, Woodard's offense carried no mandatory minimum sentence. Moreover, a review of the Arkansas proceeding discloses that the state court suspended imposition of Woodard's sentence only after a painstaking inquiry into Woodard's background suggested a high potential for reformation. Accordingly, we have no assurance that the Attorney General's office would have authorized the instant prosecution had it been accurately informed of these factors. The district court was entitled to know this. The sentencing transcript suggests that the district court accorded great weight to the fact that the Justice Department deemed prosecution appropriate in this case. *See* sent. tr. at 16, 29–30.

I add one comment. It seems to me that the Government, in declining to apply the *Petite* policy, has worked a great unfairness. The Government claims to have disapproved of the State's sentence. Yet, the Government waited until a week before Woodard successfully completed his state probation term to institute federal charges. Had the Government exercised its prerogative promptly, for example by charging Woodard immediately following his sentencing in the state court, I might feel very differently about this case.

As things stand, I cannot approve the "wait and see" approach adopted by the Government. The Government now concedes that if Woodard had failed to live up to the terms of his suspension, and therefore received a state prison term, no federal prosecution would have been instituted. Thus, in a very real sense, the Government has chosen to punish Woodard for his good behavior.

Rehabilitation should be a goal of our criminal justice system. Even if it is not, imprisonment costs money, lots of money. By present standards, Woodard's incarceration will cost the public literally thousands of dollars. And for what purpose? Woodard suffers. His friends and family suffer. His employer suffers. Society suffers. Taxpayers suffer. Inmates in overcrowded prisons suffer. In short, there are no winners from this unnecessary incarceration.

The district court apparently failed to recognize this, as well as numerous other factors, as legitimate grounds for a sentencing departure. As a dissenting judge, I recognize that the district court in this case need not reconsider its decision. In

light of the principles set forth in this dissenting opinion, I nonetheless include these observations so that another district court contemplating a downward departure in a similar case will know that it stands on firm ground. Unfortunately, this case again demonstrates that sentencing under the Guidelines often produces anomalous results.