UNITED STATES of America, Appellee,

v.

Todd LAWRENCE, Appellant.

No. 91–2349.

United States Court of Appeals,
Eighth Circuit.

Submitted Nov. 12, 1991.

Decided Jan. 2, 1992.

Scott F. Tilsen, Minneapolis, Minn., argued, for appellant.

Margaret T. Burns, Minneapolis, Minn., argued, for appellee.

Before LAY, Chief Judge, ARNOLD, Circuit Judge, and STUART,* Senior District Judge.

ARNOLD, Circuit Judge.

Todd Lawrence appeals his conviction for being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(e)(1). He raises three issues. First, Lawrence claims that the District Court[1] erred in failing to suppress statements he made while in the custody of the arresting officer without the benefit of *Miranda* warnings. Next, he argues that the District Court erred in failing to suppress statements he made during attempted plea negotiations. Finally, Lawrence claims that the District Court deprived him of his Fifth and Sixth Amendment rights by refusing his request to ask additional questions during voir dire about the credibility of police officers as witnesses. We see no error in the District Court's rulings, and therefore affirm.

## I.

On November 2, 1990, Michael Antonson, a Minneapolis police officer, attempted to make a routine traffic stop after seeing Lawrence make an illegal left turn. Instead of stopping, Lawrence sped up, abandoned the car in a Sears parking lot, and fled on foot. Shortly thereafter, another police officer caught him and returned him to the Sears parking lot, where he was placed in Officer Antonson's squad car. After Officer Antonson asked the defendant his name, a routine warrant check revealed that Lawrence had several outstanding felony warrants. Officer Antonson then told him that he was under arrest and asked him the name of the owner of the car he had been driving. No *Miranda* warnings were given.

During the drive to police headquarters, Lawrence informed Officer Antonson that he had thrown away a gun while running from the police. He stated, "I don't give a _____ about you, but I don't want some little kids to find it." Up until this point, not only had Officer Antonson not questioned Lawrence about a gun, but he had no idea that the defendant had even been carrying a gun. After Lawrence's statement, however, Officer Antonson asked him where he had thrown the gun. Lawrence attempted to explain where the gun was and then offered to draw a map at the police station. Once at the station, the defendant drew a map which Officer Antonson used to locate the gun.

Later that afternoon, Sergeant Michael Lavine of the Minneapolis Police Department read the defendant his *Miranda* rights and interviewed him regarding a burglary investigation. Lawrence again admitted that he had thrown a gun away while he was running from the police earlier that day. When told that the gun's serial numbers matched those of a gun stolen from a police officer's house, Lawrence agreed to cooperate and provide a statement, once he knew the amount of time he faced if convicted. Although Sergeant Lavine told the defendant that he would inform the county attorney of his cooperation and pass on any information the defendant gave him, he did not, and was not authorized to, enter into plea negotiations. Several days later, Lawrence executed a signed waiver of his *Miranda* rights and gave both an oral and a written statement admitting that he was a felon and possessed a gun on November 2, 1990.

After his indictment, Lawrence made several motions to suppress statements he had made to law-enforcement personnel.

---

* The Hon. William C. Stuart, Senior United States District Judge for the Southern District of Iowa, sitting by designation.

1. The Hon. Diana E. Murphy, United States District Judge for the District of Minnesota.

The motions were denied, and he was convicted by a jury on April 10, 1991. During voir dire, the trial judge asked the entire panel if any of them had "such strong feelings either for or against law enforcement officers that it would affect how [they] judged the credibility of their testimony?" None of the jurors answered yes. The judge then asked whether any of the jurors' relatives or close friends had ever worked in law enforcement. One juror indicated that he worked as a special deputy in the Water Patrol Division, patrolling the lakes and issuing misdemeanor citations. It was an unlicensed position. The juror told the judge that his involvement with law-enforcement officers would not affect him as a juror. The judge subsequently denied the defense attorney's requests to excuse this juror for cause or to allow him to question the juror further.

## II.

Lawrence contends that the statement he made to Officer Antonson in the squad car regarding the gun and the map he drew at the station should have been suppressed, since no *Miranda* warnings had been given. The District Court, after a hearing on Lawrence's motions to suppress, held that neither the statements in the car nor the map need be suppressed. We agree.

■ The protections afforded a suspect under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), apply only when the suspect is both in custody and being interrogated. A voluntary statement made by a suspect, not in response to interrogation, is not barred by the Fifth Amendment and is admissible with or without the giving of *Miranda* warnings. *United States v. Wood*, 545 F.2d 1124, 1127 (8th Cir.1976), *cert. denied*, 429 U.S. 1098, 97 S.Ct. 1118, 51 L.Ed.2d 546 (1977). The parties do not dispute the fact that Lawrence was in custody at the time of the statements in the squad car, but differ as to whether he was interrogated.

■ *Rhode Island v. Innis*, 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980), governs the interrogation issue. In *Innis* the Court defined interrogation as "express questioning" or words or actions "that the police should know are reasonably likely to elicit an incriminating response...." *Id.* at 301, 100 S.Ct. at 1689. The question in *Innis*, as in this case, was whether the defendant was interrogated. The relevant facts in *Innis* were almost identical to those in this case, possibly presenting an even stronger case for a finding of interrogation than the facts before us. While en route to the police station, the defendant in *Innis* overheard the policemen discussing the fact that if the murder weapon were not found a handicapped child from the nearby school might find it and kill herself. The defendant interrupted the conversation and led the officers to the gun. The Court found that the defendant was not interrogated. Here, the police officer did not even mention a gun. Officer Antonson merely asked a few routine identification questions necessary for booking purposes. Lawrence volunteered the statement that he had thrown away a gun while fleeing. Consequently, we affirm the District Court's holding that Lawrence's statement about the gun did not come in response to interrogation.

■ Lawrence contends further that his responses to Officer Antonson's subsequent inquiry regarding the location of the gun and the map he drew at the station should have been suppressed, since no *Miranda* warnings had been given. Although the officer's questions amounted to interrogation, the District Court held, and we agree, that the questions and answers fit the public-safety exception to the *Miranda*-warning requirement established in *New York v. Quarles*, 467 U.S. 649, 104 S.Ct. 2626, 81 L.Ed.2d 550 (1984). This exception allows a suspect's answers to interrogation by a police officer who asks "questions reasonably prompted by a concern for the public safety" to be admitted into evidence despite the absence of *Miranda* warnings. *Id.* at 656, 104 S.Ct. at 2632. Lawrence volunteered that he had thrown a gun away while fleeing. Officer Antonson had a reasonable concern that the gun might be found and do harm to an innocent child. We therefore affirm the

District Court's holding that no constitutional violation occurred.

### III.

■ Lawrence next challenges the admissibility of written statements he alleges were made in the course of plea negotiations. Rule 11(e)(6) of the Federal Rules of Criminal Procedure does not allow statements made in the course of plea negotiations "with an attorney for the government" to be admitted into evidence. This Court extended the Rule in *United States v. Grant*, 622 F.2d 308 (8th Cir.1980), to situations where law-enforcement officials enter into negotiations with *express* authority from a government attorney. There was no such express authority here. Sergeant Lavine neither had the express authority to negotiate with the defendant nor suggested to the defendant that he did. Moreover, Sergeant Lavine's statements that he would inform the county attorney of Lawrence's cooperation do not amount to plea negotiations. The District Court properly held that Rule 11(e)(6) does not apply to the facts in this case.

### IV.

■ Lawrence also argues that the District Court erred in refusing his request to ask additional voir dire questions about the credibility of police officers as witnesses. As the defendant notes in his brief, district courts have considerable discretion in determining how to conduct voir dire. Our review is limited to the question of "whether the overall jury examination, coupled with the jury charge, adequately protect[ed] the defendant from prejudice." *United States v. Eagle Hawk*, 815 F.2d 1213, 1219 (8th Cir.1987), *cert. denied*, 484 U.S. 1012, 108 S.Ct. 712, 98 L.Ed.2d 662 (1988) (citing *United States v. Spaar*, 748 F.2d 1249, 1253 (8th Cir.1984)). The trial judge in this case adequately questioned all of the jurors regarding connections to law enforcement. Upon receiving an affirmative answer from a juror in response to the question whether any of the jurors was involved with or had close friends or family who were involved with law enforcement,

the trial judge further questioned that juror about the nature of his involvement, and was told by the juror that his connection to law enforcement would not influence his decision-making process. The District Court did not abuse its discretion in crediting this answer, and we see no prejudice to the defendant.

Accordingly, as we find that the defendant has shown no error, we affirm the judgment of the District Court.