**UNITED STATES of America, Appellee,**

v.

**Frederick W. NORTON, Appellant.**

No. 87–1576.

United States Court of Appeals,
Eighth Circuit.

Submitted Jan. 15, 1988.

Decided May 16, 1988.

Charles E. Atwell, Kansas City, Mo., for appellant.

Linda L. Sybrant, Asst. U.S. Atty., Kansas City, Mo., for appellee.

Before LAY, Chief Judge, and McMILLIAN and ARNOLD, Circuit Judges.

McMILLIAN, Circuit Judge.

Frederick W. Norton appeals from a final judgment entered in the District Court[1] for the Western District of Missouri on a jury verdict finding him guilty of conspiracy to distribute cocaine in violation of 21 U.S.C. § 846 and possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1). For reversal, Norton argues that the district court erred in (1) allowing into evidence prior bad act testimony under Fed.R.Evid. 404(b), (2) giving verdict directing instructions that did not include his coercion defense, (3) admitting certain co-conspirator's statements under Fed.R.Evid. 801(d)(2)(E), and (4) denying his motion for acquittal or new trial on the conspiracy conviction because there was either insufficient evidence or a variance of the evidence from the indictment. For the reasons discussed below, we affirm.

I.

Norton, a resident of Wichita, Kansas, supplied cocaine during 1985 and 1986 to, among others, a man named Daniel Simpson. In September 1986 Simpson was arrested on state drug charges in Clay County, Missouri. In October 1986 after being released on bond, Simpson jumped bond and fled to Norton's home in Wichita. The cocaine transactions continued, and on November 24, 1986, Simpson and a man named Tim Foster traveled from Wichita to Kansas City, Missouri, with a quantity of cocaine to sell. There was evidence from which the jury could have found that Norton had supplied this cocaine. Simpson and Foster distributed a portion of the cocaine and then returned to Wichita with the remainder. Simpson and his girlfriend, Melanie Thompson, returned to Kansas City

---

1. The Honorable Howard F. Sachs, United States District Judge for the Western District of Missouri.

with slightly over two ounces of cocaine on November 29, 1986.

Meanwhile, a Missouri bonding company hired Thompson's brother to attempt to capture Simpson. On November 29, 1986, Thompson's brother learned that Simpson and Thompson were staying at the Park Inn Motel in Kansas City. Thompson's brother lured Simpson out of the motel and caused his arrest. Simpson had left the cocaine in the motel room, and Thompson eventually returned to the motel and retrieved the cocaine. Thompson informed her brother that she had the cocaine a few days later. On December 1, 1986, Foster became concerned about Simpson's whereabouts, and called Rick Rhalfs, a friend of Simpson and Thompson. Rhalfs informed Foster of Simpson's arrest. Foster and Norton traveled that evening to Kansas City to meet Rhalfs to discuss retrieving the cocaine from Thompson. On December 3, 1986, Foster met with Thompson and asked her to accompany him to a meeting with Norton regarding return of the cocaine. Thompson declined this invitation, whereupon Foster informed her that it was "too bad what is going to have to happen."

After this meeting with Foster, Thompson called her brother and they contacted agents of the Drug Enforcement Administration (DEA). The DEA agents arranged a tape-recorded telephone call from Thompson to Norton, in which a meeting was arranged between Thompson and Rhalfs for the return of the cocaine. Thompson wore a tape recorder to this meeting, and after Thompson transferred the cocaine to Rhalfs, he was arrested by DEA agents. Rhalfs and Norton were jointly indicted on December 16, 1986. Rhalfs agreed to testify against Norton in exchange for more lenient treatment.

At trial, Norton asserted the defense of coercion. He testified that he was forced to take part in the drug transactions by two Colombians named Alberto Munoz and Espaldo Palaez. Norton stated that between 1980 and 1982 he was involved with these two men in the distribution of cocaine in the Wichita area. In 1982 Norton was charged in federal court with extortion, stemming from the collection of drug debts owed to the two Colombians. Norton pled guilty to these charges and agreed to cooperate with the Federal Bureau of Investigation. During 1982 and 1983 Norton was involved in numerous drug investigations in Kansas. As a result of his cooperation, Norton was placed on probation in January 1984.

Norton testified that in December 1985 the two Colombians re-approached him in an attempt to collect monies owed from prior drug dealings. When Norton indicated that he did not have the money and would not be able to pay it, shots were fired at Norton's home and he was threatened over the phone. Later, the two Colombians appeared at Norton's home where they threatened Norton's family and slashed a family picture with a knife. On another occasion, Norton was "pistol whipped" and hospitalized by the Colombians. Norton further testified that he was forced by the Colombians to take part in the transactions alleged in the indictment. The Colombians allegedly forced Norton to travel to Kansas City to retrieve the cocaine from Thompson. Palaez, armed, rode with Norton in the car from Wichita to Kansas City.

At trial the jury rejected Norton's coercion defense and found him guilty of conspiracy to distribute cocaine and possession with intent to distribute cocaine. The district court sentenced Norton to two concurrent terms of twenty years imprisonment. This appeal followed.

## II.

Norton first argues that the district court erred in admitting, through the testimony of Simpson, Thompson, and a third cohort of Norton named Samuel Ruggles, evidence of Norton's prior cocaine dealings. The district court concluded that this evidence could be admitted pursuant to Fed.R. Evid. 404(b).

■ In general, evidence of prior bad acts is admissible when (1) it is relevant to an issue in question other than that of the character of the defendant, (2) the prior

acts are similar in kind and reasonably close in time to the crime charged, (3) there is clear and convincing evidence that the defendant committed the prior acts, and (4) the potential unfair prejudice of the evidence does not substantially outweigh its probative value. *Llach v. United States,* 739 F.2d 1322, 1327 (8th Cir.1984); *United States v. Miller,* 725 F.2d 462, 466 (8th Cir.1984). We afford broad discretion to the district court in its determination of whether or not to admit prior acts evidence. *United States v. Gilmore,* 730 F.2d 550, 554 (8th Cir.1984).

In the instant case, the evidence of the previous cocaine transactions was relevant to prove intent and common scheme or plan. While Norton asserts that his intent was not an issue in question because his only defense was that he was coerced to take part in the transactions, the government is not limited in its proof of its case by a defendant's representations of what his defense will be after the government rests. The prior acts were substantially similar to the acts alleged in the indictment. All of these acts were drug transactions in which Norton participated as a supplier or purchaser of cocaine. As to the transactions described by Simpson and Thompson, Norton supplied the cocaine to the same persons involved in the transactions alleged in the indictment. These prior drug transactions were also reasonably close in time to November 24, 1986, the date when the crimes charged in the indictment began. The transactions described by Thompson occurred in September 1986 and Simpson and Ruggles testified to prior cocaine transactions during 1985 and 1986.

The evidence as a whole demonstrated the ongoing nature of Norton's cocaine business and was elicited in great detail from several different witnesses. The prior acts were therefore established by clear and convincing evidence, and we cannot say that the district court abused its discretion in finding the evidence to be more probative than prejudicial. We note in this connection that the district court repeatedly instructed the jury concerning the limited purpose for which the evidence of prior acts was admitted. We therefore hold that the district court did not abuse its discretion in admitting evidence of Norton's prior cocaine transactions.[2]

### III.

Norton next argues that the district court erred in failing to include the negative of his proffered coercion defense as an essential element of the crime in the verdict directing instructions, although the district court did give a separate instruction on coercion to the jury. Norton correctly notes that the Model Criminal Jury Instructions for the Eighth Circuit (rev. ed. Sept. 1986) supports his position. Note on Use 2 to the model verdict directing instruction, number 3.07, suggests that the negative of any submissible defense should be added as an element of the offense. Similarly, the Introductory Comment to the section of the Model Instructions on "affirmative defenses" states that when the coercion defense is in issue, "a final element regarding that matter, phrased in the negative, should be added to the general elements instruction as provided for in

---

2. Norton also argues that the prior acts evidence should not have been admitted because the government failed to provide his counsel with a written list of the prior acts to be offered at least ten days before trial as required in the omnibus discovery procedures for the Western District of Missouri. The government concedes that it failed to comply with the omnibus procedures, but submits that Norton was not prejudiced because he was fully apprised of the prior acts to be offered by the government's case reports and Norton's counsel's own interviews with Simpson, Ruggles, and Thompson. Norton properly raised this objection before the district court, which offered to grant him additional time to prepare a response to the prior act evidence, but did not exclude the evidence. We agree that exclusion of the evidence was unnecessary under these circumstances, but do not condone the government's failure to comply with the omnibus procedures, particularly in view of the fact that these procedures are intended to eliminate the need for defense discovery motions. We share Norton's concerns that defendants should not be discouraged from filing discovery motions only to have the government omit to comply with their discovery obligations under the omnibus procedures. We are not inclined to reverse on these facts, however, in view of the lack of prejudice to Norton.

Note on Use 2 under instruction 3.07." The Model Instructions, however, are not binding on the district courts of this circuit, but are merely helpful suggestions to assist the district courts. Accordingly, we hold that it was not reversible error for the district court to omit the coercion instruction as part of the verdict directing instruction. We further hold, however, that it is the better practice to include "affirmative defense" instructions, where submissible, in the verdict directing instruction, as prescribed by the Model Instructions, and all instructions given after the date of the filing of this opinion should do so.

### IV.

■ Norton next challenges the admission into evidence of several tape-recorded conversations between Thompson and Rhalfs, as well as the admission, through the testimony of Thompson, of statements made by Foster to Thompson. All of these conversations involved Rhalfs' and Foster's attempts to persuade Thompson to return the cocaine to them, and were admitted as co-conspirator's statements under Fed.R. Evid. 801(d)(2)(E). Because Norton failed to make these objections before the district court, we review the admission of these statements only for "plain error." *United States v. Hollister*, 746 F.2d 420, 424–25 (8th Cir.1984). We have no difficulty in this case holding that no error was committed, much less plain error. Statements of co-conspirators are admissible if the government is able to demonstrate that (1) a conspiracy existed, (2) the defendant and the declarant were members of the conspiracy, and (3) the declaration was made during the course and in furtherance of the conspiracy. *United States v. Lewis*, 759 F.2d 1316, 1338–39 (8th Cir.), *cert. denied*, 474 U.S. 994, 106 S.Ct. 407, 88 L.Ed.2d 357 (1985); *United States v. Bell*, 573 F.2d 1040, 1043 (8th Cir.1978). The testimony of Thompson, Simpson, and Rhalfs clearly established that a conspiracy existed and that Norton, Rhalfs, and Foster were members of the conspiracy. The statements of Rhalfs and Foster were clearly made in the course and in furtherance of the conspiracy; both concerned the recovery of cocaine from Thompson so as to further the conspiracy.

### V.

■ Norton's final argument is that the evidence was not sufficient to support his conviction for conspiracy to distribute cocaine, or, alternatively, that the evidence impermissibly varied from the indictment because it established two separate conspiracies. The indictment charged that Norton conspired with Rhalfs and others known and unknown to the grand jury to distribute cocaine. Norton argues that there was insufficient evidence to show that he had conspired with Rhalfs and that the language of the indictment "others known and unknown" was not specific enough to put him on notice of the charges against him insofar as the government relied on evidence of conspiracy involving Norton and anyone other than Rhalfs. Norton also asserts that the evidence showed not one, but two conspiracies: one conspiracy to distribute cocaine and another to recover the cocaine lost to Thompson.

We find that the evidence, viewed in the light most favorable to the government, *United States v. Hicks*, 619 F.2d 752, 755 (8th Cir.1980), amply demonstrated a single conspiracy to distribute cocaine that included Norton, Rhalfs, and others. The attempt to recover the cocaine lost to Thompson was but one episode in the single conspiracy to obtain and sell cocaine. Even though the evidence of Rhalfs's involvement concerned only his efforts to help Norton and Foster recover the cocaine from Thompson, "[a] coconspirator may become a member of a conspiracy without being in it at its inception. He adopts the previous acts of his fellow conspirators when, with knowledge of the conspiracy's existence, he undertakes to further its design." *United States v. Lemm*, 680 F.2d 1193, 1204 (8th Cir.1982), *cert. denied*, 459 U.S. 1110, 103 S.Ct. 739, 74 L.Ed.2d 960 (1983). Because Rhalfs knew at the time he was helping to recover the cocaine that he was acting as part of the conspiracy's

cocaine distributing activities, Rhalfs was a member of the conspiracy.

Accordingly, the district court's judgment is affirmed.

ARNOLD, Circuit Judge, concurring.

I concur in the result and in all of the Court's opinion except for the last sentence in part III. I do not believe that it is wise or appropriate for this Court to dictate in such detail the form of jury instructions to be used in the district courts.