UNITED STATES of America, Appellee,

v.

Wayne Morris HUFF, Appellant.

UNITED STATES of America, Appellee,

v.

Henry LOVE, Appellant.

UNITED STATES of America, Appellee,

v.

Willie LOVE, Appellant.

Nos. 91–1091, 91–1093 and 91–1187.

United States' Court of Appeals, Eighth Circuit.

Submitted Oct. 17, 1991.

Decided March 24, 1992.

---

**9.** This finding, although not expressly stated by the post-conviction court, is implicit in its holding. *See* Legal File at 41, 43 (*Cornman v. State,* No. CV888–2CC (Mo.Ct.App. Nov. 28, 1988) (Respondent's Suggested Findings of Fact and Conclusions of Law at 4 and Court's Order)).

Michael Seager, St. Paul, Minn., argued, for appellant Wayne Morris Huff.

Michael McNabb, Burnsville, Minn., argued, for appellant Henry Love.

Demetrius Clemons, Minneapolis, Minn., argued for appellant Willie Love.

Nathan P. Petterson, Minneapolis, Minn., argued (Jerome G. Arnold and Nathan P. Petterson, appear on the brief), for appellee.

Before FAGG, Circuit Judge, HEANEY, Senior Circuit Judge, and BOWMAN, Circuit Judge.

HEANEY, Senior Circuit Judge.

A grand jury indicted Wayne Morris Huff, Henry Love, and Willie Love on June 20, 1990. Count I of the indictment charged all three defendants with attempting to possess one kilogram of cocaine, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2; Count II charged Willie Love with possession of a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1); Count III charged Willie Love, a previously convicted felon, with possession of a firearm, in violation of 18 U.S.C. § 922(g); Count IV charged all three defendants with conspiracy to possess one kilogram of cocaine with intent to distribute, in violation of 21 U.S.C. § 846. On September 14, 1990, a jury found Huff, Henry Love, and Willie Love guilty on all counts. All three appeal their convictions. We affirm.

## BACKGROUND

In May 1990, Demon Echols became an informer for the Brooklyn Park, Minnesota Police Department. As part of his arrangement with the police, Echols would receive five percent of any money he obtained through "reverse sales" of narcot-

ics.[1] On May 23, 1990, Echols and his friend Wayne Huff met Huff's uncle, Willie Love, at Annie's Restaurant in Minneapolis. Echols told Love that he knew someone who would sell Love one-half kilogram of cocaine for $9,000. Love gave Echols his pager number and told Echols to call him when the deal could be put together.

The next day Echols called Love and told him that his source, "Bob," would sell Love a kilogram of cocaine for $20,000. "Bob" was actually Detective Robert Malmquist of the Brooklyn Park Police, posing as a cocaine dealer from St. Cloud, Minnesota. On May 25, Huff and Echols met Malmquist in the parking lot of the Sheraton Hotel in Brooklyn Park and obtained a small sample of the cocaine for testing. When Huff and Echols returned to Annie's Restaurant, Willie Love told them that the cocaine sample was too small to cook in order to test it. During this meeting at the restaurant, Willie Love left the table twice to talk to his brother, Henry Love, who was waiting in another part of the restaurant.

Huff and Echols returned to the hotel parking lot and again met Malmquist, who was with Detective Mike Kaulfuss. After several telephone calls to Willie Love, the parties agreed that the transaction would take place in the parking lot of Henry Love's apartment building in Brooklyn Park. Huff, Echols, Malmquist, and Kaulfuss then drove to the apartment building. After they arrived, Willie and Henry Love appeared outside the entrance to the building. Malmquist handed the one kilogram brick of cocaine to Henry Love, who gave Malmquist a bag containing $20,000. At this time, Huff and Henry Love were arrested. Police officers chased Willie Love into the building and up the stairs into the second floor hallway, where they arrested him. They found a loaded gun lying on the floor at the top of the stairs in the apartment building; they later learned that the gun was registered to Annie Tidwell, Willie Love's wife. Police also arrested Lillie

Mae Wesson, who was found hiding in a storage locker on the second floor.

Six police officers then made a "protective sweep" of Henry Love's apartment, and two of the officers remained there while Sgt. Wade Setter obtained a search warrant. The officers then executed the search warrant. Among the items they seized were $4,000 in cash hidden in a wall in the bedroom; a loaded shotgun; a police scanner and six pages of police frequencies; a hospital bill and a repair bill in the name of Henry Love; documents in the name of Willie Love; and a photograph of Willie Love.

## DISCUSSION

1. Constitutionality of the Reverse Sting.

All of the appellants contend that the reverse sting tactics used by the police in this case are unconstitutional. The government's involvement in an undercover operation may violate principles of due process if it is "so outrageous and shocking that it exceed[s] the bounds of fundamental fairness." *United States v. Johnson*, 767 F.2d 1259, 1275 (8th Cir.1985); *see also Hampton v. United States*, 425 U.S. 484, 96 S.Ct. 1646, 48 L.Ed.2d 113 (1976). A majority of Justices agreed in *Hampton* that even where the defendant is predisposed to commit an offense, "outrageous police conduct" could conceivably bar the defendant's conviction based on due process principles. *Id.* at 492–93, 96 S.Ct. at 1651–52 (Powell, J., concurring); *Id.* at 499, 96 S.Ct. at 1654 (Brennan, J., dissenting). When the defendant is predisposed to committing the crime, however, a reverse sting will not ordinarily rise to the level of a due process violation. *See, e.g., Gunderson v. Schlueter*, 904 F.2d 407, 410 (8th Cir.1990) (reverse sting not "outrageous"); *Johnson*, 767 F.2d at 1275 (same); *United States v. Leroux*, 738 F.2d 943, 948 (8th Cir.1984) (same); *United States v. McCaghren*, 666 F.2d 1227, 1230–31 (8th Cir. 1981) (same). The relevant facts of this

---

1. In a "reverse sale" or "reverse sting," rather than purchasing drugs, undercover police sell drugs to the target of the investigation.

case are not substantially different from the other cases in which we have upheld reverse stings. We find, therefore, that the police conduct in this case was not so outrageous as to deprive appellants of the due process of law.

## 2. Selective Prosecution.

■ Henry Love and Willie Love next argue that by excluding statistics on the race of defendants arrested in reverse stings in Minneapolis, the district court erroneously precluded them from establishing a defense of selective prosecution. The only support that Henry Love and Willie Love offer for their claim of selective prosecution is a newspaper article from the *Minneapolis Star Tribune* stating that 87 percent of arrests in reverse sting cases in Minneapolis were of African Americans. After the article was published during appellants' trial, Henry Love attempted to elicit similar testimony on racial statistics from a prosecution witness, Paul Stevens of the Minnesota Bureau of Criminal Apprehension. The district court sustained an objection to Stevens's testimony on that issue on grounds of irrelevancy.

■ The defendant bears the burden of proof on a selective prosecution claim. *United States v. Holmes*, 794 F.2d 345, 347 (8th Cir.1986). In order to make out a prima facie case of selective prosecution, the defendants must show: (1) that they were singled out for prosecution while others similarly situated were not prosecuted for similar conduct; and (2) that the decision to prosecute was based on an impermissible motive such as race, religion, or an attempt by the defendant to secure other constitutional rights. *Id.; see also United States v. Matter*, 818 F.2d 653, 655 (8th Cir.1987) (two newspaper articles indicating that appellant's arrest was part of a federal crackdown against motorcycle clubs were not sufficient to establish prima facie case of selective prosecution); *United States v. Hintzman*, 806 F.2d 840, 846 (8th Cir.1986) (appellant who did not establish prima facie case of selective prosecution could not compel discovery of materials requested in connection with his selective prosecution claim).

■ Even if Stevens had been permitted to testify regarding racial statistics and his testimony had comported with the newspaper article, Love would not have established a prima facie case of selective prosecution. There is no evidence in the record that "similarly situated" non-African Americans were not being prosecuted for similar conduct. Nor did appellants offer any evidence that the decision to prosecute them was based on their race. Because appellants could not make out a prima facie case of selective prosecution, we cannot say that the district court erred in excluding as irrelevant testimony on racial statistics.

## 3. Henry Love's Motion for a Mistrial.

■ On redirect examination by the government, Detective Malmquist testified that Henry Love was in possession of a small quantity of marijuana at the time of his arrest. The district court subsequently instructed the jury to disregard this evidence. Henry Love contends, however, that the district court should have granted his motion for a mistrial because he was unfairly prejudiced by Detective Malmquist's testimony. The decision whether prejudicial testimony has so tainted a trial that a mistrial is required lies within the discretion of the district court. *United States v. Muza*, 788 F.2d 1309, 1312 (8th Cir.1986). Even if the district court's decision not to declare a mistrial in this case was erroneous, however, any error that might have occurred was harmless. *See United States v. Leisure*, 844 F.2d 1347, 1363 (8th Cir.1988), *cert. denied*, 488 U.S. 932, 109 S.Ct. 324, 102 L.Ed.2d 342 (1988). The jury heard evidence that Henry Love was present during the May 25 meeting between Echols, Huff, and Willie Love, and that Willie twice left the table to speak with Henry; that on one of those occasions, Willie told Henry to "go do what I told you to do and bring your ass right back;" that Henry purchased the cocaine from Malmquist in exchange for $20,000; that he twice told Malmquist that there was "twenty" in the bag that he exchanged for the

cocaine; and that he had $1,071 in cash and a pager on his person when he was arrested. Viewing the record as a whole, the evidence of Henry Love's guilt is overwhelming and the error, if any, is harmless.[2]

### 4. Use of Evidence From Henry Love's Apartment Against Huff.

 Wayne Huff claims that the evidence seized from Henry Love's apartment should not have been admitted because it had no connection to Huff and unfairly prejudiced the jury against him. It is a general rule, however, "that persons charged in a conspiracy should be tried together, particularly where proof of the charges against the defendants is based upon the same evidence and acts." *United States v. Jackson*, 549 F.2d 517, 523 (8th Cir.1977), *cert. denied*, 430 U.S. 985, 97 S.Ct. 1682, 52 L.Ed.2d 379 (1977). It is almost inevitable in a joint trial that there will be quantitative and qualitative differences in the evidence against each defendant. *Id.* at 525. Any prejudice against Huff in the instant case was cured by the district court's instruction to the jury that:

> It is also your duty to give separate, personal consideration to each case of each individual defendant. When you do so, you should analyze what the evidence in the case shows with respect to that individual, leaving out of consideration entirely any evidence admitted solely against some other defendant or defendants. Each defendant is entitled to have his own case determined from the evidence as to his own acts and statements and conduct, and any other evidence in the case which may be applicable to him.

There is no reason to believe that the jury was not capable of "compartmentalizing" the evidence from Henry Love's apartment as it related to each defendant. *Id.*

### 5. Huff's Prior Drug Sales.

 Huff next argues that the district court erred by permitting Demon Echols to testify about Huff's prior sales of cocaine. On redirect examination, Echols testified that he had observed Huff selling "crack" cocaine during the summer of 1990. Echols further testified that in early 1990, Huff had indicated to Echols in conversations that Huff was still selling crack.

 The decision to admit evidence of a defendant's prior bad acts is within the discretion of the trial judge, and is reviewed under an abuse of discretion standard. *United States v. Bowman*, 798 F.2d 333, 337 (8th Cir.1986), *cert. denied*, 479 U.S. 1043, 107 S.Ct. 906, 93 L.Ed.2d 856 (1987); *United States v. Gustafson*, 728 F.2d 1078, 1083 (8th Cir.1984), *cert. denied*, 469 U.S. 979, 105 S.Ct. 380, 83 L.Ed.2d 315 (1984). Rule 404(b) of the Federal Rules of Evidence provides that:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

In addition, evidence of prior bad acts must be similar in kind and reasonably close in time to the crime charged. *United States v. Anderson*, 879 F.2d 369, 378 (8th Cir. 1989), *cert. denied*, 493 U.S. 982, 110 S.Ct. 515, 107 L.Ed.2d 516 (1989). "The ultimate question always remains whether the evidence 'is admissible to prove any relevant issue other than the character of the defendant or his propensity toward criminal activity.'" *United States v. Drew*, 894 F.2d 965, 970 (8th Cir.1990), *cert. denied*, 494 U.S. 1089, 110 S.Ct. 1830, 108 L.Ed.2d 959 (1990) (quoting *United States v. McDaniel*, 773 F.2d 242, 247 (8th Cir.1985)).

In cases charging narcotics violations, we have often upheld the district court's decision to admit evidence of prior drug trans-

---

**2.** Henry Love also raises several search and seizure issues. Even without the items seized from Henry Love's apartment, however, the evidence of his guilt is overwhelming. We there-

fore hold that any error that the district court committed in admitting evidence seized from Henry Love's apartment was harmless.

actions as evidence of intent, knowledge, or a common plan or scheme. *See, e.g., Drew,* 894 F.2d at 970; *United States v. Haynes,* 881 F.2d 586, 590 (8th Cir.1989). In *United States v. Norton,* 846 F.2d 521, 524 (8th Cir.1988), we held that evidence of the defendant's prior cocaine transactions was relevant to prove intent and common scheme or plan. Although the defendant in *Norton* asserted that evidence of his intent was irrelevant because his only defense was coercion, we noted that "the government is not limited in its proof of its case by a defendant's representations of what his defense will be after the government rests." *Id.*

Evidence of Huff's prior cocaine transactions also was relevant to prove intent and common scheme or plan. As in *Norton,* while Huff's intent may not have been an issue in question, the government could not have known that at the time of Echols's testimony. Echols's testimony covered the year immediately preceding Huff's arrest in the instant case, thus fulfilling the requirement that the prior bad acts be close in time to the offense charged. Huff's sales of cocaine were sufficiently similar to the cocaine charges that he faced in this case. Finally, the district court gave a limiting instruction to the jury in accordance with Federal Rule of Evidence 404(b). We cannot, therefore, say that it was an abuse of discretion for the district court to permit Echols to testify about Huff's prior cocaine sales.

6. Entrapment Instruction.

 Huff next argues that it was error for the district court not to give Huff's requested jury instruction on entrapment. A defendant is entitled to an entrapment instruction if he comes forward with evidence that (1) government agents implanted the criminal design in his mind, and (2) government agents induced him to commit the offense. *United States v. Felix,* 867 F.2d 1068, 1074 (8th Cir.1989). There must be "sufficient evidence from which a reasonable jury could find entrapment." *Mathews v. United States,* 485 U.S. 58, 108 S.Ct. 883, 886, 99 L.Ed.2d 54 (1988); *United States v. Anspach,* 910 F.2d 524, 525 (8th Cir.1990). In his brief, Huff presents the following as evidence of entrapment: Detective Malmquist pretended that he had met Huff before; the police set a low price for the cocaine to make it an attractive offer; the cocaine was 97.2% pure; the police gave Huff a small sample of the cocaine to test; the police insisted on dealing in Brooklyn Park rather than Minneapolis; Malmquist gave Echols $5 to put gas in Huff's car; and Detectives Malmquist and Kaulfuss made every effort to appear as legitimate drug dealers. None of this, however, amounts to any evidence that government agents implanted the idea for the drug sale in Huff's mind, or that agents induced him to commit an offense that he would not have otherwise committed. In fact, the evidence presented at trial shows that before Echols even suggested the drug deal to Huff and Willie Love, Willie Love told Huff and Echols that he was in the market for one-half kilogram of cocaine. Huff, therefore, was not entitled to an instruction on entrapment.

7. Admission of the Audio Tape.

 Huff next contends that the district court abused its discretion by admitting into evidence a partially inaudible audio tape of car phone conversations between Huff, Echols, and Malmquist. The decision to admit partially inaudible audio tapes is a matter within the sound discretion of the district court. *United States v. Bell,* 651 F.2d 1255, 1259 (8th Cir.1981). In making its decision, the district court should assess whether the unintelligible portions of the tape are "so substantial, in view of the purpose for which the tapes are offered, as to render the recording as a whole untrustworthy...." *Id.* (quoting *United States v. Young,* 488 F.2d 1211, 1214 (8th Cir.1973)). Based on our review of the record, we are satisfied that the district court's admission of the tape was not an abuse of discretion for the very reasons that we upheld the district court's decision in *Bell:*

> [T]he conversations were probative of material issues raised in the indictment, the tapes were audible enough to provide the jury with the "gist" of the conversa-

tions, and the defendant was given every opportunity to offer his version of the inaudible portions so as to clear up whatever ambiguities the tapes might have raised.

*Bell,* 651 F.2d at 1259.

8. Sufficiency of the Evidence.

 Finally, Huff contends that there was insufficient evidence to support his conviction. We will uphold Huff's conviction if, viewing the evidence in the light most favorable to the government, we find that there is substantial evidence to support the jury's verdict. *United States v. Schubel,* 912 F.2d 952, 955 (8th Cir.1990). At trial, the jury heard evidence that Huff, Willie Love, and Echols met initially to discuss the drug purchase; that Huff negotiated with Detective Malmquist over the details of the transaction; that Huff accepted a sample of the cocaine for testing from Malmquist; and that Huff was arrested in the car with Henry Love after Love took possession of one kilogram of cocaine. We find that this was sufficient evidence for the jury to convict Huff.

9. Newly Discovered Evidence.

 Willie Love requests a new trial on Counts II and III on the basis of Lillie Mae Wesson's post-trial statement that the gun found in the hallway of the apartment building belonged to her. "The proper procedure for obtaining a new trial on the basis of newly discovered evidence is by a motion to the trial court" under rule 33 of the Federal Rules of Criminal Procedure. *United States v. Boberg,* 565 F.2d 1059, 1062 (8th Cir.1977); *see also Stafford v. Ford Motor Co.,* 790 F.2d 702, 706 (8th Cir.1986). We therefore decline to reach this issue.

### CONCLUSION

For the reasons discussed, we affirm the convictions of all three appellants.

* The HONORABLE RICHARD H. BATTEY, United States District Judge for the District of South